UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| ELAINE L. CHAO, Secretary of Labor, United States Department of Labor, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Civil Action No. CV-01-S-2435-NE |
| EMPLOYERS UNDERWRITERS, INC., *et al.*, | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

The court granted the motion of Administrator Jeanne Barnes Bryant for interpleader relief on January 16, 2004.[1] The adverse claimants to the interpled funds were made parties to this action, for the sole purpose of determining how the interpled funds should be distributed. Each claimant has submitted argument and evidence to support his or her respective position.[2]

**I. FACTUAL BACKGROUND**

A.  The Underlying Action

The underlying action was commenced by Elaine Chao, Secretary of Labor, United States Department of Labor ("the Secretary"), on September 27, 2001. The

---

[1]Doc. no. 39.
[2]*See* doc. nos. 40 and 42.

Secretary asserted claims against defendants Employers Underwriters, Inc., Roel B. Nabors, and Southeastern Lumberman's Association, Inc. ("defendants"), under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, for violations of their fiduciary obligations to participants in the Benefit Plans of Southeastern Lumberman's Association ("the Plans").[3] The parties reached an agreement resolving all of plaintiff's claims, and the court entered a Consent Judgment and Order on September 20, 2001 ("Consent Judgment"), embodying the terms of that agreement.[4]

Pursuant to the terms of the Consent Judgment, Jeanne Barnes Bryant was appointed independent fiduciary and administrator ("Administrator") of the Plans, and vested with authority to carry out the terms of the Consent Judgment and accompanying Order.[5] In accordance with paragraphs 3 and 4 of the Consent Judgment, defendants paid a total of $625,000.00 for the purpose of establishing a cash settlement fund for the benefit of former participants and beneficiaries of the Plans ("the Fund").[6]

The Administrator identified thirteen individual claimants (and estates of

---

[3] Doc. no. 1 (complaint), at 1-3.
[4] Doc. no. 9 (Consent Judgment and Order).
[5] *See id.* at ¶ 5.
[6] *Id.* at ¶¶ 3-4.

deceased individual claimants) to whom she proposed disbursements should be made from the Fund.[7] After the parties and the claimants all had been provided an opportunity to object to the Administrator's report, the court approved the Administrator's proposed plan for distribution of the Fund assets.[8] The court ordered the Administrator on November 18, 2003, to distribute to each claimant the *pro rata* amount specified for that claimant in the Exhibit attached to the order.[9]

**B.     Administrator's Motion For Interpleader Relief**

The Administrator filed a motion for interpleader relief on January 12, 2004.[10] She stated that she made final payments to all but one of the claimants to the Fund.[11] The remaining payment is for $364,218.52, on an accidental death claim submitted by the Estate of Randy Jackson (the "Jackson claim").[12] The Jackson claim arises from Plan Number S00705, which defendants issued to Jerry McGehee Logging ("the McGehee Plan").[13] The McGehee Plan provided benefits for accidental death and dismemberment, accident total disability, and accident medical expenses to employees

---

[7]Doc. no. 18 (Third Report of Administrator).
[8]Doc. no. 33 (Order Approving Distribution of Funds to Certain Participants), at 4.
[9]*Id.* at 5.
[10]Doc. no. 36.
[11]Doc. no. 37 (brief in support of motion for interpleader relief), Exhibit A (Affidavit of Jeanne Barnes Bryant), at ¶ 2.
[12]*Id.* at ¶ 2.
[13]Doc. no. 40, Exhibit 7, at unnumbered page 34.

of McGehee Logging who suffered on-the-job injuries.[14] The Estate of Randy Jackson filed a claim under the McGehee Plan after Jackson, an employee of McGehee Logging, died as a result of injuries he suffered at work.[15]

The McGehee Plan provided a maximum of $500,000.00 in benefits for the beneficiary of an employee who died from a job injury.[16] Recovery under the McGehee Plan was limited to payment of the benefits prescribed in the policy; the plan did *not* provide worker's compensation insurance, general liability insurance, or the right to legal representation in an lawsuit arising from the employee's injury.[17]

Upon investigation, the Administrator determined that payment on the Jackson claim should be made to Randy Barlow, the beneficiary of the Jackson estate; Kathy Barlow, the mother and legal guardian of Randy Barlow; and Bridgett M. Clayton, the attorney for Randy and Kathy Barlow.[18] Accordingly, the Administrator delivered a check to Clayton, dated December 10, 2003, and made payable to "Randy Barlow, Kathy Barlow, and their attorney, Bridgett Clayton."[19] The check never was cashed because Clayton and the Barlows disagree over how the funds should be divided

---

[14]*Id.* at unnumbered pages 34-54.

[15]*See id.,* Exhibit 8, at unnumbered page 60 (Investigation Summary by Occupational Safety and Health Association).

[16]*Id.,* Exhibit 7, at unnumbered page 36.

[17]*Id.* at unnumbered page 41; *id.* at Exhibit 3.

[18]Brief in support of motion for interpleader relief, at ¶¶ 4-5.

[19]*Id.* at ¶ 7; Exhibit B.

among them. Because the Administrator was faced with conflicting claims to the proceeds of the Jackson claim, the court granted her motion for interpleader relief.[20]

## C. Clayton's Representation Of The Barlows

Clayton entered into a "Contract for Legal Services" with Kathy Barlow, as the legal representative of Randy Barlow, on July 22, 1999.[21] Clayton agreed to represent the Barlows in a wrongful death action against Jerry McGehee and Jerry McGehee Logging, based on those parties' alleged negligence in causing Randy Jackson's death.[22] The contract provided that Clayton would be entitled to forty-five percent of any award recovered, if the suit settled at trial.[23]

Clayton filed a complaint on the Barlows' behalf on September 13, 1999, in the Circuit Court of the Second Judicial District of Hinds County, Mississippi. The complaint asserted a claim against Jerry McGehee and Jerry McGeheee Logging, jointly, severally, and individually, pursuant to the wrongful death laws of the state of Mississippi.[24] In the Mississippi state court case, the parties engaged in discovery,

---

[20]*See* Fed. R. Civ. P. 22.
[21]Doc. no. 40 (Clayton's memorandum in response to motion for interpleader relief), at Exhibit 1.
[22]*Id.*
[23]*Id.* at Exhibit 1.
[24]*Id.* at Exhibit 5.

including taking depositions.[25] The Barlows' case was set for trial in July of 2000.[26] It is unclear from the record whether the trial actually commenced. However, it *is* clear that the Barlows reached a settlement agreement with McGehee and McGehee Logging Company, and that the agreement was approved by the Mississippi judge assigned to the Barlows' case on August 25, 2000.[27] McGehee and McGehee Logging Company agreed to pay the Barlows

> $7,500.00 over and above and in addition to the monthly benefits already being received[28] as complete, final settlement, and full satisfaction of all claims and demands, present and future, known and unknown, anticipated and unanticipated, against [McGehee and McGehee Logging Company] on account of or in any way growing our [sic] of the injuries, damages and death of Randy Jackson.[29]

The terms of the agreement allowed Clayton an "agreed reduced fee" of $2,500.00, and an additional $1,000 for expert witness expenses she had incurred.[30]

## II. DISCUSSION

Kathy and Randy Barlow assert that the Administrator should make the check

---

[25]*Id.* at Exhibits 7-10.

[26]*Id.* at Exhibit 11.

[27]*Id.* at Exhibit 12.

[28]As of July 24, 2000, Randy Barlow had received a total of $63,083.64 in Accidental Death and Medical Benefits from Employers Underwriters, Inc. *See id.,* Exhibit 7, at unnumbered page 67 (letter from Susie Montgomery, Claims Analyst at Employer's Underwriters, Inc., dated July 24, 2000). According to Montgomery, Randy Barlow would continue to receive benefit payments at the rate of $714.45 per month until he reached the age of 18.

[29]*Id.,* Exhibit 12, at 6.

[30]*Id.* at 5, 7.

for the proceeds of the Jackson claim payable only to them, and not to Clayton, because Clayton "is no longer the representative" of Randy Barlow.[31] The Barlows maintain that they never asked Clayton to represent them in collecting any money from any of the defendants in the underlying instant action, and that they never agreed to pay Clayton a contingency fee, beyond the amount she collected from the settlement of the Mississippi wrongful death suit.[32] The Barlows refuse to sign the check as it is presently styled, and request the Administrator to reissue the check, making it payable only to them.[33]

Clayton, on the other hand, insists that she is entitled to forty-five percent of the $364,218.52 amount of the check. Clayton states that the check represents delayed payment which should originally have been made as a result of the wrongful death action she filed on the Barlows' behalf in Mississippi state court.[34] She argues that she is entitled to forty-five percent of the claim proceeds, pursuant to the contract she entered into with the Barlows, as compensation for her legal services.[35]

This court is not persuaded that the contract between Clayton and the Barlows entitles Clayton to receive forty-five percent of the Barlows' recovery from the

---

[31] Brief in support of motion for interpleader relief, at Exhibit C.
[32] Doc. no. 42 (Barlows' response to motion for interpleader relief).
[33] Brief in support of motion for interpleader relief, at Exhibit C.
[34] *Id.* at Exhibit D.; doc. no. 40, at 5-6.
[35] Brief in support of motion for interpleader relief, at Exhibit D; doc. no. 40, at 6.

defendants in this action. Clayton agreed to represent the Barlows in a wrongful death action *against Jerry McGehee and Jerry McGehee Logging*. She, accordingly, commenced a wrongful death lawsuit against those parties on the Barlows' behalf in Mississippi state court, and recovered a $2,500.00 fee when that suit settled. The instant action does not arise from the wrongful death lawsuit Clayton brought on the Barlows' behalf. Rather, the instant suit arises from an investigation by the Department of Labor into defendants' violations of their fiduciary obligations to participants in their benefit plans.

Moreover, the proceeds of the Jackson claim at issue herein do not, as Clayton alleges, represent "delayed payment" on the wrongful death suit Clayton filed for the Barlows. Clayton's evidentiary submissions make it clear that the McGehee Plan, from which the Jackson claim is being paid, was *not* a liability insurance plan. Rather, the McGehee Plan was a "limited, accident-only plan."[36] Thus, funds from the plan could not be used to satisfy any judgment the Barlows might have gotten against Jerry McGehee or Jerry McGehee Logging in their wrongful death lawsuit. The McGehee Plan merely provided for *automatic* payment of benefits to the beneficiary of an employee who died as a result of work-related injuries. A finding of liability was not a prerequisite to receipt of those benefits; thus, Randy Barlow could have collected

---

[36]Doc. no. 40, at Exhibit 3; *see also id.*, Exhibit 7, at unnumbered page 41.

the benefits even if no wrongful death suit had ever been filed. Indeed, at the time the settlement agreement was reached in the Barlows' wrongful death suit, Randy Barlow already had received at least $63,083.64 in Accidental Death and Medical Benefits from defendants.[37]

The cases Clayton cites to support her argument that she is entitled to forty-five percent of the Jackson claim proceeds are distinguishable. First, in *Franklin v. Franklin,* 858 So. 2d 110 (Miss. 2003),[38] two wrongful death actions, filed by two separate plaintiffs (a brother and a sister), who employed two separate attorneys, were consolidated for trial. *Id.* at 113. After the consolidation, counsel for the two plaintiffs began to work together. However, Harrell & Snow, the attorneys for the plaintiff-sister, performed approximately ninety percent of the work in the consolidated case. *Id.* at 113-14. Before trial, the case settled for $1,750,000, with each plaintiff to receive half of the settlement amount. *Id.* at 113. The judge ordered that all attorney fees recoverable pursuant to the settlement agreement should be paid to Waller, the attorney for the plaintiff-brother. *Id.* at 115. Harrell & Snow appealed the award of attorney fees, and the Mississippi Supreme Court held that Waller should

---

[37] Doc. no. 40, Exhibit 7, at unnumbered page 67 (letter from Susie Montgomery, Claims Analyst at Employer's Underwriters, Inc., dated July 24, 2000).

[38] The Eleventh Circuit has held that when a dispute arises between an attorney and her client, the dispute should be resolved in accordance with the law of the state in which the attorney-client relationship arose. *Nowell v. Dick,* 413 F.2d 1204, 1209 (11th Cir. 1969). The relationship between Clayton and the Barlows arose in Mississippi; thus, Mississippi law governs this dispute.

not have received the entire fee award, because he had performed only approximately ten percent of the work on the case. *Id.* at 116-20. The court cautioned that Waller should not be allowed to receive a windfall, and stated that "an attorney who *substantially* contributes to a wrongful death settlement should be compensated for his time and effort." *Id.* at 116 (emphasis supplied).

Likewise, in *Stubblefield v. Walker,* 566 So. 2d 709 (Miss. 1990), a payment dispute arose between William Lawson, an attorney, and Barry Walker, another attorney with whom Lawson associated to work on a case for Lawson's client, Stubblefield. As a result of Lawson and Walker's work, a $1,200,000 jury verdict was entered in Stubblefield's favor. *Id.* at 710-11. Lawson received a forty-five-percent contingency fee, pursuant to his contract with Stubblefield. Walker contended that he was entitled to half the contingency fee award, but Lawson refused to pay Walker any more than $5,000 for his work on the case. *Id.* at 711. Lawson sued Walker for slander of title after Walker asserted a claim to half the contingency fee award, and Walker counterclaimed for his share of the fee. *Id.* at 710. The jury found that Walker had spent approximately 200 hours preparing for the trial in the Stubblefield case, including preparing jury instructions, interviewing witnesses, reading depositions, attending conferences, and conducting legal research, and had even substantially participated in the trial itself. *Id.* at 711. Thus, the jury awarded Walker

half of the contingency fee, on a quantum meruit theory, and the Mississippi Supreme Court upheld the award. *Id.* at 711-12.

These cases stand for the proposition that an attorney who performs substantial work on a case is entitled to a portion of the recovery *in that case.* They do *not* lend *any authority* to Clayton's argument that, because she had a contractual entitlement to forty-five percent of the Barlows' recovery *in the wrongful death action she filed on their behalf in Mississippi state court*, she also is entitled to forty-five percent of the Barlows' recovery in *this lawsuit*, which did not arise from the wrongful death action Clayton filed.

Moreover, Clayton did not *substantially* participate in the instant action. The Secretary of the United States Department of Labor initiated the investigation that led to this suit; the Department of Labor litigated the suit itself; and the court-appointed Administrator worked to determine the proper recipients of the settlement funds. Clayton's involvement was limited to correspondence with the Administrator on the Barlows' behalf. Other than correspondence related to this interpleader, the record indicates that Clayton received two letters from the Administrator,[39] and sent two letters to the Administrator.[40] This limited correspondence certainly does not constitute *substantial* participation in the instant suit. Thus, there is no basis to

---

[39] Doc. no. 40, at Exhibits 13 & 19.
[40] *Id.* at Exhibits 14 & 17.

support Clayton's contention that she is entitled to receive forty-five percent of the proceeds of the Jackson claim.

However, Clayton is entitled to *some* compensation for the services she rendered on the Barlows' behalf. *See Franklin,* 858 So. 2d at 120-21 ("When a party accepts and uses the services of an attorney knowing that compensation is expected, a contract will be implied for the payment of attorneys fees."). That compensation should reflect the reasonable value of the services Clayton actually rendered to the Barlows *in this action. See In re Estate of Stewart,* 732 So. 2d 255, 259 (Miss. 1999) (citations omitted) (stating that "the amount of recovery 'is limited to the monetary equivalent of the services rendered . . .' for which payment has not been tendered"); *West Center Apartments Ltd. v. Keyes,* 371 So. 2d 854, 858 (Miss. 1979). Accordingly, Clayton will be ordered to produce a written statement, along with supporting documentation, of (1) the number of hours she actually worked for the Barlows *in relation to this action*, (2) the hourly rate she normally, and reasonably, would charge for such work, and (3) any expenses she has actually incurred in relation to her representation of the Barlows *in this action*.[41] The statement should not include

---

[41]Clayton is advised that the court will not look favorably upon any unreasonable, or undocumented, estimate of the fees and expenses she has incurred, and that the court will strictly construe the limitation that Clayton only is entitled to recovery for work she has *actually* performed *in this action.* Clayton has performed only limited work, and she will be entitled only to limited recovery. Any attempt by Clayton to recover for work that actually was performed in relation to the Mississippi wrongful death suit she filed on the Barlows' behalf, or in relation to the Administrator's motion for interpleader relief, may result in the loss of Clayton's right to recover altogether.

any fees or expenses Clayton incurred in relation to the Administrator's motion for interpleader relief, whether incurred before or after the motion for interpleader relief was filed.

### III. CONCLUSION

Based on the foregoing, Clayton is not entitled to forty-five percent of the Barlows' recovery in this action. However, she is entitled to the reasonable value of the services she actually rendered to the Barlows in connection with this action. An appropriate order will be entered contemporaneously herewith.[42]

DONE this 16th day of April, 2004.

_____
United States District Judge

---

[42]The court will consider the Administrator's request for fees and expenses once it receives Clayton's statement of the fees and expenses she has incurred in relation to this action.